UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARK L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:18-CV-338 JD |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Mark L. applied for social security disability benefits, alleging that he became disabled when he severely broke his left leg just below the knee. He alleged that even after the break healed, he had limited use of his leg and continued to experience significant pain. On remand from a previous appeal, an administrative law judge found that Mr. L. had severe impairments that included complex regional pain syndrome, and that he had a number of physical limitations relative to his ability to use his leg. The ALJ also found, though, that Mr. L. retained the capacity to perform several jobs. Thus, Mr. L.'s claim was again denied and he again appealed. Because the ALJ's decision did not acknowledge or account for a Social Security Ruling that governs the analysis of complex regional pain syndrome, the Court reverses and remands for further proceedings.

**I. FACTUAL BACKGROUND**

In September 2012, Mr. L. jumped down about four feet off of a deck. The landing shattered Mr. L.'s left tibial plateau—the bone that forms the bottom of the knee joint. Two

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

weeks later, Mr. L. underwent surgery to have plates and screws implanted to repair the bone. At the time, Mr. L. was forty-four years old and was working in construction, but he was unable to return to work during his recovery and he applied for social security disability benefits shortly thereafter. Mr. L. continued to heal after the surgery, but still experienced symptoms including pain and swelling. In December 2012, he tripped and landed with full weight on his left foot, causing additional pain.

In June 2013, Mr. L. sought treatment from a pain management specialist. He described his pain as moderate-to-severe and reported sensitivity to touch. The doctor also noted some swelling and color changes in Mr. L.'s left knee. She diagnosed Mr. L. with complex regional pain syndrome, and recommended that he receive an injection, which he did several months later. Mr. L. continued to receive treatment over the ensuing months, and his doctor opined that he would be unable to return to his previous job in construction. At some appointments, Mr. L. was observed walking without a limp, while at others he walked with a limp and the assistance of a cane. The levels of pain Mr. L. reported fluctuated somewhat as well.

Mr. L. later received a hearing on his claim for disability benefits. An ALJ found that while he was unable to return to his previous work, Mr. L. would be able to perform other jobs, so he denied Mr. L.'s claim. On appeal, the parties jointly agreed to remand the matter to the Commissioner for further proceedings. The claim was sent to a new ALJ with instructions to evaluate Mr. L.'s complex regional pain syndrome and to obtain expert medical evidence if warranted. This time, the ALJ found that Mr. L.'s severe impairments included complex regional pain syndrome, and he found that Mr. L.'s limitations were more extensive than those found by the first ALJ. His conclusion, though, was the same, as he found that Mr. L. retained the residual

functional capacity to perform other jobs. After the Appeals Council denied review, Mr. L. filed this action seeking review of that decision.

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

3

## III. STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. § 404.1522(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). A claimant qualifies as disabled if he

or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV. DISCUSSION

Mr. L. argues that the ALJ failed to properly consider and account for certain of his limitations, and that the ALJ failed to adequately evaluate his testimony about the nature and severity of his limitations. In particular, Mr. L. argues that the ALJ failed to evaluate his complex regional pain syndrome consistent with Social Security Ruling 03-2p, which governs the evaluation of that condition. The Court agrees.

Social Security Ruling 03-2p explains the Commissioner's policies for evaluating complex regional pain syndrome.[2] As relevant here, the Ruling discusses two significant yet unusual characteristics of that condition. The first is that the condition often produces a degree of pain that is "out of proportion to the severity of the precipitating injury." SSR 03-2p (noting also that even a minor injury can trigger this condition and that it is "characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual"). In other words, a claimant who experiences this condition will often not have the sort of objective clinical findings that would normally be expected to produce the amount of pain the individual is reporting.

Second, the symptoms associated with this condition are often transitory—they "may be present at one examination and not appear at another." The Ruling thus notes that "conflicting

---

[2] Social Security Rulings are interpretive rules intended to offer guidance to agency adjudicators, and are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

5

evidence in the medical record is not unusual in cases of [complex regional pain syndrome] due to the transitory nature of its objective findings and the complicated diagnostic process involved." Thus, while ALJs often point to evidence of inconsistencies in the record as an indication a condition is not as severe as a claimant says, that same reasoning might not apply when a claimant has complex regional pain syndrome, as to which such contradictions are common. Given those difficulties in evaluating this condition, the Ruling directs ALJs to first seek clarification of any such conflicts from the claimant's treating physician or other medical sources, and notes that opinions from medical sources and other third parties are important.

The ALJ's decision did not cite to this Social Security Ruling (despite frequently citing to other Social Security Rulings when applicable to other issues). Nor did it otherwise acknowledge the Ruling or reflect an awareness of the characteristics of complex regional pain syndrome discussed in the Ruling. Worse, it discounted Mr. L.'s alleged limitations in part for reasons that appear inconsistent with the issues discussed in the Ruling. For example, the ALJ discounted Mr. L.'s claims in part because "[e]xaminations have been relatively benign" and "the claimant has failed to exhibit any clinical signs of a debilitating illness." (R. 393). Yet as the Ruling explains, both of those observations are common with complex regional pain syndrome, which often produces pain out of proportion to the severity of an injury. The ALJ also discounted Mr. L.'s claims in part because of what he interpreted as inconsistent medical evidence. (R. 391 (noting "the instability of the medical evidence"), 392 ("[N]ot all physical findings after 2015 are similar . . . . Findings such as these broadcast an opposite picture from the claimant's allegations and even previously seen difficulties.")). But as also discussed in the Ruling, transient findings are typical of complex regional pain syndrome. These perceived inconsistencies thus might not be contrary to Mr. L.'s claims. Having failed to acknowledge this Ruling or the issues it

6

discusses, the ALJ's decision does not provide a logical bridge for why these factors justify discounting Mr. L.'s claims.

In defense of the ALJ's opinion, the Commissioner argues in part that the ALJ accommodated all of the physical limitations to which Mr. L. testified, and that the ALJ's decision not to adopt further physical limitations was justified. However, the ALJ did not incorporate any mental limitations or other limitations that would account for the effects of the pain Mr. L. reported. *See* SSR 03-2p ("Chronic pain and many of the medications prescribed to treat it may affect an individual's ability to maintain attention and concentration, as well as adversely affect his or her cognition, mood, and behavior . . . ."). Mr. L. testified that he "can't stay that focused with the pain," and that his medication causes tiredness. (R. 416). The ALJ did not adopt any corresponding limitations, implicitly discounting Mr. L.'s testimony in those respects. Had the ALJ given greater weight to that testimony in light of the evaluation required by the Ruling, he might have adopted a more restrictive residual functional capacity, so the Court cannot find that the error is harmless.

The Court also acknowledges that some of the discussion in the ALJ's decision might ultimately support the same conclusion the ALJ reached. For example, the ALJ noted some instances in which he interpreted Mr. L.'s testimony to be internally inconsistent. (R. 388). The Court does not mean to imply that the ALJ must accept Mr. L.'s claims, only that he should evaluate them consistent with the Ruling and in light of the characteristics of this condition discussed in the Ruling. Given the Ruling's emphasis on the importance of medical opinions in evaluating this condition, the ALJ may wish to seek a medical opinion on this subject in order to draw those conclusions. But because the current decision does not acknowledge these issues or justify why no further limitations are warranted due to Mr. L.'s complex regional pain syndrome,

the Court must reverse and remand for further proceedings. The Court does not address the remaining arguments the Mr. L. raises, which he is free to raise to the ALJ on remand.

## V.  CONCLUSION

The Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  June 21, 2019

                                        /s/ JON E. DEGUILIO
                                  Judge
                                  United States District Court